THE PEOPLE, Plaintiff and Respondent, v. BARRETT
EDWARD DOPTIS, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and John C. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

CHANTRY, J. pro tem.*—Defendant Barrett Edward Doptis was charged by information in case number 272138[1] with a violation of section 11531 of the Health and Safety Code (illegal sale of marijuana) and by information in case number 272144 with a violation of section 11500 of the Health and Safety Code (illegal possession of heroin). The two cases were consolidated and handled together from the time of the preliminary hearings. Defendant waived a jury, and by stipulation of counsel both cases were submitted on the transcript of the preliminary hearing. No further evidence was introduced by either side. The court found defendant guilty as charged. After appropriate proceedings the defendant was ordered committed to the California Rehabilitation Center. Defendant was subsequently returned from the Rehabilitation Center as an unfit subject for the Narcotic Drug Addiction Program, whereupon the trial court sentenced him to state prison in each of the two cases.

Due to the nature of the issues raised, a rather extensive review of the facts is necessary.

### No. 272138

On March 7, 1963, Deputy Sheriff Kenneth Broadfoot furnished one Steve Priolo, apparently an informer, with a telephone number, and requested Priolo to call that number. Broadfoot could not hear what the party on the other end of the call was saying, as he did not listen on an extension. All that Broadfoot could hear were the following statements made by Priolo to the person on the other end of the line: "May I speak to Barrett"; "Barrett, this is Steve." Priolo then

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]References to case numbers are to the numbers of the cases in the superior court.

asked whether the person on the other end of the line had any "weed," and ended with, "We will meet you at the Burger Boy at Carson and Woodruff." There was no evidence as to what was said by the person on the other end of the line.

Broadfoot and Priolo then went to a hamburger stand, the Burger Boy, at the intersection of Carson and Woodruff Streets. Broadfoot was not wearing his uniform at this time. Shortly after Broadfoot and Priolo arrived at the Burger Boy they observed defendant arrive in a car driven by a John Steven Lane.[2] Defendant alighted from the car, approached Priolo, and stated, "See Steve in the car about the weed." Broadfoot and Priolo went to Lane's car, and talking through the open window on the driver's side, Priolo introduced Broadfoot to Lane. Priolo then asked Lane if he could "score a can of weed," to which Lane replied that he "would have to go get it." Lane then asked Broadfoot for payment in advance, which Broadfoot refused. This resulted in a conversation which culminated in a decision that Lane and defendant would meet Broadfoot and Priolo later. Defendant suggested that the later meeting should take place at the Tic-Toc Drive-in at the corner of Carson and Lakewood. After some further conversation betewen Lane and Broadfoot, Lane told Broadfoot to meet him at 4:15 p.m. at the Tic-Toc Drive-in.

The meeting at the Tic-Toc Drive-in took place as scheduled. Lane and defendant arrived shortly after Broadfoot and Priolo. Lane was still driving, with defendant as his passenger. Defendant approached the window on the driver's side of the car in which Priolo was the driver and Broadfoot was the passenger and engaged in general conversation. Approximately five minutes later Lane approached the driver's side of the car occupied by Priolo and Broadfoot. As he did so, defendant stepped out of his way. Lane then asked Priolo for the money and upon receiving it handed a white bag to Priolo containing a substance which was stipulated to be marijuana. During this transaction defendant was 1 to 2 feet behind Lane. Defendant took no active part in the transfer of either the marijuana or the money. Broadfoot and Priolo then left the drive-in ahead of defendant and Lane.

### Number 272144

On March 26, 1963, at about 12:15 a.m., Deputy Sheriff Carl Trout, accompanied by Deputy Broadfoot and two other

---

[2]John Steven Lane was charged in case number 272138 as a co-defendant. He pleaded guilty and is not involved in this appeal.

sheriff's deputies, went to the residence of defendant's parents, where defendant was living. They had a warrant in their possession for his arrest charging defendant with the sale of marijuana, the charge arising out of the facts related above in connection with case number 272138.

The officers informed defendant that he was under arrest for violation of the narcotics laws. Heroin was found in defendant's possession. Defendant denied ownership but when asked if the heroin belonged to his parents or anyone else in the house, he said, "No, it's mine." Defendant was then handcuffed and taken to the Lakewood sheriff's station. En route to the station defendant told the officers how and where he procured the heroin. While defendant did not appear to be under the influence of narcotics at the time of his arrest, Trout did notice fresh needle marks on defendant's left arm which, in Trout's opinion, had been made two to fourteen days prior to the arrest.

## Questions Presented

Defendant argues that as to case number 272138 the conviction must be reversed because the evidence was not sufficient to sustain the conviction. In case number 272144 he argues that the rule of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], cert. denied 381 U.S. 937 [14 L.Ed.2d 702, 85 S.Ct. 1765], was violated by the introduction into evidence of his confession of ownership of the heroin.

## Sufficiency of the Evidence

In case number 272138 defendant contends that his involvement in the commission of the crime was so minimal as to make applicable to this case the rule that mere presence at the scene of the crime does not make a person liable as a principal. However, an appellate court will not draw an inference contrary to that drawn by the trial court if there is sufficient substantial evidence to support the lower court. (*People* v. *Herrera* (1959) 171 Cal.App.2d 551 [340 P.2d 690].) We find that there is substantial evidence in the record to support the conclusion that defendant aided and abetted in the sale of marijuana.

Penal Code section 31 provides in part: "All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and

abet in its commission . . . are principals in any crime so committed." *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133 [318 P.2d 828] states: ██ "To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must share the criminal intent with which the crime was committed."

██ The record in this case shows that a police informer called defendant, asked him for a can of "weed" (mari- .juana) and arranged a meeting. When defendant and his co-defendant arrived at the meeting place, defendant told the informer to "See Steve in the car about the weed." Defend- ant later suggested where a second meeting could take place. At the second meeting place defendant engaged in general conversation with the informer and a police agent and then stood closely by while his co-defendant handled the sale of the marijuana. Defendant and his co-defendant then drove away together after the sale. We find these facts sufficient to sup- port conclusions that defendant shared the criminal intent with which the crime was committed; that he was present for the purpose of assisting in the commission of the crime, and that therefore he was an aider and abettor and guilty as a principal in the sale of marijuana.

*People* v. *Perez* (1958) 162 Cal.App.2d 650 [328 P.2d 512], is a very similar case where the evidence was found sufficient to sustain conviction for selling heroin. In that case a police undercover officer met Perez in a bar and asked him "if he had anything." Perez said that he did and asked how much he wanted. The officer said that he wanted half a gram. Perez pointed to another man seated nearby and told the officer to go to a certain liquor store and wait for the other man. The officer went to the liquor store. The other man arrived and sold the officer heroin. In this case the evidence against. defendant Doptis is even more convincing than that against Perez in *People* v. *Perez,* since the evidence shows that Doptis was not only acting as a go-between, as was Perez, but was present at the time of the transaction.

The judgment in case number 272138 is affirmed.

### Use of Confession

██ Defendant argues that his conviction in case number 272144 should be reversed because the use of his confession at

trial violated the rules set forth in the *Escobedo*[3] and *Dorado*[4] cases.

Defendant was found guilty on July 29, 1963. However, he was committed to the California Rehabilitation Center under the Narcotic Drug Addiction Program, and judgment was not entered until May 1967, which was well after the effective date of the *Escobedo-Dorado* rule.[5]   The Supreme Court of this state has recently resolved this very question in favor of defendant in *People* v. *Crisp* (1969) 71 Cal.2d 1235 [78 Cal. Rptr. 169, 455 P.2d 105], wherein it was held that the *Escobedo-Dorado* prohibition against the use at trial of confessions obtained other than in accordance with rules set forth therein was applicable to cases in which the reason for the non-finality of the judgment was the commitment of the defendant to a narcotics rehabilitation facility.

There was no showing here that defendant was accorded his constitutional rights prior to the time he confessed, and we cannot presume that he was accorded them. (*People* v. *Rivers* (1967) 66 Cal.2d 1000, 1005 [59 Cal.Rptr. 851, 429 P.2d 171].; *People* v. *Stewart* (1965) 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97], affd. 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Since defendant's trial was held prior to the *Escobedo-Dorado* decisions, it was not necessary for him to raise this point at the trial. (*People* v. *Doherty* (1967) 67 Cal.2d 9. [59 Cal.Rptr. 857, 429 P.2d 177].) Therefore, on the authority of *People* v. *Crisp, supra,* the judgment in case number 272144 is reversed.

Stephens, Acting P. J., and Reppy, J., concurred.

---

[3]*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].

[4]*People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

[5]The rule applies to all cases in which the appeals were not final as of June 22, 1964. (*In re Lopez* (1965) 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]; *In re Shipp* (1965) 62 Cal.2d 547 [43 Cal.Rptr. 3, 399 P.2d 571].)